UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-77-FDW

| | |
|---|---|
| LEVON TODD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| SUSAN WHITE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A, (Doc. No. 13), on Plaintiff's Motion for Preliminary Injunction, Motion for Temporary Restraining Order, (Doc. No. 12), and on Plaintiff's Motion to Appoint Counsel, (Doc. No. 15). On April 4, 2016, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 6). Thus, Plaintiff is proceeding in forma pauperis.

### I.  BACKGROUND

Pro se Plaintiff Levon Todd is an inmate of the State of North Carolina, currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. Plaintiff filed his Amended Complaint on September 9, 2016, pursuant to 42 U.S.C. § 1983, naming the following persons as Defendants: Susan White, identified as the Superintendent of Mountain View at all relevant times; Mike Slagle, Assistant Superintendent of Mountain View at all relevant times; Defendants FNU Grant, FNU Frank, FNU Wiseman, FNU Benefield, FNU Holiman, and FNU Huggins, all identified as correctional officers at Mountain View at all

1

relevant times; Norma Melton, identified as the head nurse at Mountain View at all relevant times; and unnamed correctional officers at Mountain View who held the position of transportation/correctional officers at all relevant times. (Doc. No. 1 at 2-3). Plaintiff purports to bring numerous claims against Defendants, and he has sued them in both their individual and official capacities. Specifically, Plaintiff alleges the following:

> Plaintiff is an insulin dependent type-2 diabetic. November 2013, Plaintiff was American Disabilities Act (ADA) approved while housed at Mountain View Correctional. . . . Starting a year prior and leading to the filing of the complaint. The Plaintiff has been in contention with the administration and specifically Defendant White concerning the Plaintiff's efforts to practice his Islamic faith at Mountain View Correctional. Defendant White went so far as to state to the Plaintiff "Be sure this is the road you want to go down. Because if that is your choice I promise you as long as I'm superintendent of this institution it will be a hard and bumpy road."
> Not long following the independent incident with Defendant White, the Plaintiff started being denied his right to eat following his insulin incident where he received insulin before every meal. Defendants Grant, Frank, Holiman, Benefield, and Wiseman limited the Plaintiff's time to eat to one minute or denied him the chance to eat at all. This took place over two dozen times. The Plaintiff has heard himself called a "terrorist" and a "Muslim" numerous times by the Defendants as he was leaving the dining hall without eating.
> On one occasion, after the Plaintiff was refused the opportunity to eat the Plaintiff approached Defendant Captain Huggins, explaining to him that he had just taken his insulin and there was a medical need for him to eat. Defendant Huggins replied, "I think you been here long enough to know we did not explain anything to you kind. You have two choices keep moving or say one more word and go to segregation. But regardless of what choice you decide you are not going to eat."
> On March 25, 2014, and March 26, 2014, while taking his daily insulin shot, Plaintiff complained to Defendant Melton specifically about excruciating headaches, blurred vision, loss of balance, numbness, and tingling of limbs. The Plaintiff's complaints were to no avail.
> On March 27, 2014, Plaintiff's complaining was witnessed by then officer in charge Captain Whittington suggested calling (EMS) an ambulance.
> Defendant Melton contacted Defendant Slagle who arranged contrary to Capt. Whittington suggestion for the Plaintiff to be transported by institutional transportation officers.
> The Plaintiff was placed in full restraints by Defendant Smith. The handcuffs were so tight they cut into the Plaintiff's wrist resulting in swelling and discoloration in the Plaintiff's hands.

2

> The Plaintiff repeatedly pleaded with Defendant Smith to loosen the cuffs. Defendant Smith refused to comply. Upon Sgt. Rebecca Dale seeing the condition of the Plaintiff's wrist and hands immediately adjusted them herself.
> The Plaintiff was transported to Spruce Pines Hospital. The hospital then immediately determined the Plaintiff was suffering from a massive stroke.
> The Plaintiff was placed in an ambulance and transported to Grace Hospital in Morganton, North Carolina, where he stayed for four days.
> Upon leaving Grace Hospital, Defendants unknown correctional officers fully restrained Plaintiff who had little or no use of his limbs at said times. And instead of using a wheelchair to transport the Plaintiff, the Defendant drag Plaintiff from transport vehicle to Central Prison and also from Grace Hospital to the transportation vehicle.
> Plaintiff stayed at Central Prison for three months in the hospital unit and was then transferred back to Mountain View Correctional.
> The Plaintiff was then transferred to Alexander Correctional for physical therapy where he stayed for give months. During his stay there the Plaintiff suffered serious complications due to stroke and diabetes combined.
> Upon returning to Mountain View Correctional the Plaintiff was now in a wheelchair, speech impaired, and sight impaired
> The Plaintiff saw the provider Mr. Urban who informed the Plaintiff he was a doctor but not a stroke doctor and the Plaintiff would need to be transferred to see a specialist. Defendant Melton became irate stating "there is nothing else that can be done for him. We will not be now or later transferring him."
> A week later the Plaintiff was assigned a health assistant. The denial of the Plaintiff's right to eat not only continued but increased in fervor.
> One of the main prerequisites for the maintenance of and the upkeep of the Plaintiff health is therapeutic recreation. Therapeutic recreation is not offered at Mountain View Correctional.
> The Plaintiff wrote a grievance on this issue and was informed that Mountain View Correctional is not a medical facility.
> The Plaintiff has not seen a stroke specialist, a speech therapist nor has he been transferred to a medical facility.

(Id. at 4-8).

Plaintiff contends that his "problems did not manifest until after the Plaintiff's altercation with Defendant White over Islamic practice at Mountain View Correctional." (Id. at 10). Plaintiff further alleges that "[t]he preventing the Plaintiff from eating, retaliation for exercising the right to practice religion, the excessively tight hand restraints, etc. violated Plaintiff Levon Todd's rights and constituted cruel and unusual punishment, right to equal treatment, a due

3

process violation under the Fourteenth and Eighth Amendments to the United States Constitution." (Id.). Plaintiff also alleges that "the denial of the opportunity to eat numerous times violated Plaintiff Levon Todd's rights and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution." (Id. at 11).

As to Defendant Smith, Plaintiff alleges that "Defendant Smith placing the Plaintiff in restraints pursuant to his transfer served a penological need. When his efforts of placing the handcuffs so tightly to the Plaintiff's wrist became obvious and he did nothing his actions became cruel and unusual punishment. The placing of handcuffs on the Plaintiff so tight to cause lacerations in addition to swelling and discoloration" violated Plaintiff's Eighth Amendment rights. (Id. at 12). Plaintiff also alleges that the conduct of unnamed correctional officers in "dragging" Plaintiff as he was leaving Grace Hospital constituted cruel and unusual punishment in violation of the Eighth Amendment. As for his deliberate indifference claim, Plaintiff alleges that "the repeat notification of stroke like symptoms without proper medical treatment and the provider's order for treatment of stroke denied by nurse" violated Plaintiff's Eighth Amendment rights. (Id. at 13-14). Plaintiff further alleges that "therapeutic recreation was not only not offered but the Plaintiff was informed the institution where he was housed was not a medical camp" and that the prison's denial of his right to "decent conditions" in the prison also violated his Eighth Amendment rights. (Id. at 14). Plaintiff seeks compensatory damages, punitive damages, and declaratory and injunctive relief. (Id. at 14-15).

II. **STANDARD OF REVIEW**

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore,

§ 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

### III.    DISCUSSION

The Court finds that this action survives initial review under Section 1915 in that Plaintiff's claims are not clearly frivolous.

Next, in support of the motion to appoint counsel, Plaintiff states, among other things, that he is physically disabled, he is incarcerated, he has limited knowledge of the law and no access to a law library, and that the issues involved in this case are complex. There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Notwithstanding Plaintiff's contentions to the contrary, this case does not present exceptional circumstances that justify appointment of counsel. Therefore, Plaintiff's motion to appoint counsel will be denied.

The Court next addresses Plaintiff's Motion for Preliminary Injunction, Motion for Temporary Restraining Order. In the motion, Plaintiff seeks a show cause order from this Court, ordering Defendants to show cause "why a preliminary injunction should not issue . . . enjoining

the defendants, their successors in office, agents and employees and all other persons acting in concert and participating with them, from the destruction of any video, relevant records or other exculpatory evidence, associated with this civil action . . . ." (Doc. No. 12 at 1). Plaintiff's motion will be denied. Plaintiff seeks an order from this Court requiring Defendants to preserve any evidence relevant to Plaintiff's claims, including "video" and "relevant records or other exculpatory evidence." The Court finds that an order requiring Defendants not to destroy evidence is unnecessary because Defendants already have a duty to preserve evidence. Under the doctrine of spoliation, parties have a duty to preserve (including a duty to not destroy) evidence when litigation is filed or becomes reasonably anticipated. See Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001); Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009). To fulfill the duty to preserve relevant evidence, "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a "litigation hold" to ensure the preservation of relevant documents." Id. at 511. Here, if Defendants destroy any exculpatory evidence they will be subject to sanctions. However, because they are already under a duty to preserve evidence, an order from this Court is not necessary. Accord Wright v. Webber, C/A No. 1:11-2199-TLW-SVH, 2011 WL 6112371, at *3 (D.S.C. Nov. 10, 2011) ("Plaintiff has not shown that he will suffer irreparable damage if an injunction does not issue, as Defendants already have a legal duty to preserve existing evidence when a lawsuit is filed."); McNair v. Ozmint, C/A No. 3:07-3470-HFF-JRM, 2008 WL 2128121, at *4 (D.S.C. May 20, 2008) (denying a motion for a temporary restraining order to preserve cassette tapes because there already existed a duty to preserve material evidence).

Finally, in an accompanying Declaration, but not in the motion itself, Plaintiff includes

language in the form of a proposed Order from this Court stating that, pending a show cause hearing, Defendants must "retrain[] from ongoing deliberate indifference towards Plaintiff's serious medical needs." (Doc. No. 12-2 at 2). To the extent that Plaintiff seeks a separate order from this Court ordering Defendants to restrain from "ongoing deliberate indifference," he did not include this in his motion, and it is therefore unclear whether this is part of the relief sought. See (Doc. No. 12). In any event, at this time, Plaintiff has not shown that he is entitled to a preliminary injunction or a temporary restraining order as to his deliberate indifference claim. The factors to be weighed when determining whether such drastic relief as a preliminary injunction is warranted are: (1) the likelihood of irreparable harm to plaintiff if the temporary restraining order is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest in granting the relief requested. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir.1991). Preliminary injunctive relief directed to running a state prison should be granted only in compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). While Plaintiff has expressed concern that Defendants are not treating him properly with regard to his diabetes, he has not shown that he is immediate danger of irreparable harm. If the Court were to intervene in the day-to-day operations of the prison based merely on Plaintiff's assertions here, it is likely that considerable harm to the ability of prison officials to run their facility would result. Thus, the balance of hardships does not weigh in Plaintiff's favor, and his motion for a preliminary injunction or temporary restraining order is denied at this time.

    **IV.    CONCLUSION**

For the reasons stated herein, the Court finds that Plaintiff's action survives initial review.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint survives initial review under 28 U.S.C. § 1915(e).

2. Plaintiff's Motion for Preliminary Injunction, Motion for Temporary Restraining Order, (Doc. No. 12), and Plaintiff's Motion to Appoint Counsel, (Doc. No. 15), are **DENIED**.

3. **IT IS FURTHER ORDERED THAT**, the Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and return for service of process on Defendants. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants.

Signed: January 30, 2017

_[signature]_

Frank D. Whitney
Chief United States District Judge